379 P.2d 455

**John MILLS, a minor, by his guardian ad litem, Gordon Mills, and Gordon Mills, Appellants,**

**v.**

**CHARLES ROBERTS AIR CONDITIONING APPLIANCES, a corporation, and Ed Rhodes, Appellees.**

**No. 7035.**

Supreme Court of Arizona.

En Banc.

Feb. 28, 1963.

Moore & Moore, by Robert C. Moore, Phoenix, for appellants.

Shimmel, Hill & Kleindienst, by Rouland W. Hill, Phoenix, for appellees.

UDALL, Vice Chief Justice.

An action was brought in the Superior Court by John Mills, a minor, and Gordon Mills, his father, to recover for damages resulting from alleged negligence by the defendant. A jury verdict and a judgment in accordance with the verdict were ren-

dered for defendant and against plaintiff. Plaintiff's motion for a new trial was denied, and from this the plaintiffs appeal.

On October 7, 1957, defendant Ed Rhodes, employee of defendant Roberts Air Conditioning Appliances, was called to the residence of Gordon Mills to service an air conditioning unit. He drove a truck on this call which was equipped with a tool compartment having a lid that when opened served as a work shelf at the right side of the truck. After using the shelf to work on the motor of the air conditioner Rhodes left it in its open position when he took the motor back to the house to test it. It was during this time that John Mills, a five year old son of the Mills family, ran around the front and along the right side of the truck and collided with the lowered shelf, striking his head against the same and causing considerable injury to himself. The facts were submitted to the jury seemingly upon the question of defendant Rhodes' negligence in leaving the shelf in its lowered position. Error is assigned in giving the following instruction:

"Inasmuch as the amount of caution used by the ordinarily prudent person varies in direct proportion to the danger known to be involved in the undertaking, if you find from the evidence that John Mills was injured by striking his head upon a shelf used and left projecting as a work bench by Ed Rhodes, then in determining whether Ed Rhodes acted negligently in so doing, you may consider the utility to the defendant, Ed Rhodes, of using the shelf as a work bench as compared to the degree of risk to others, of its injuring him."

■ Plaintiff argues that the instruction is contrary to law in that it informs the jury that the law sanctions negligence of a defendant so long as his conduct is "convenient" to himself, and in that it limited the jury to a matter of balancing "convenience" to one person against danger to another person and told the jury that if the "convenience" to defendant outweighed the danger to plaintiff then defendant was not negligent.[1]

With regard to these arguments we quote from Harper and James, The Law of Torts, Vol. 2, Little, Brown and Company (1956) § 16.9:

"The broad test (of negligent conduct) * * * is what a *reasonably prudent person* would foresee and would do in the light of his foresight under the circumstances. (Emphasis supplied.) * * * The amount of caution 'de-

---

1. Rather than the word "convenience" the plaintiff could better have used the word "usefulness", a synonym of "utility" which is used in the instruction. See Webster's New International Dictionary, 2d Edition. The term "convenience" denotes something less than the term "usefulness".

manded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk.'

\*   \*   \*   \*   \*   \*

"Outside the fields of illegal enterprise and of strict liability, the interest whose sacrifice is in question on the issue of negligence is the *value of the particular act or omission which is challenged as negligent.* \* \* \* Liability for negligence is not based on engaging in dangerous but lawful activities though their dangerous character may call for greater precautions \* \* \*."

In the case of Crane v. Smith, 23 Cal.2d 288, 144 P.2d 356, 362 (1943) cited by the appellant the California Supreme Court said:

"As in all cases where a standard of conduct is involved, the reasonable character of the care depends upon whether the interference with the actor's own affairs is warranted by the other's danger. The broad concept underlying the determination of reasonableness of conduct in tort law is stated as follows: 'Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act *or of the particular manner in which it is done.'*

\* \* \* *If the actor reasonably can accomplish the same result by other conduct which involves less opportunity for harm to others, the risk incurred by the manner of doing business which resulted in injury is clearly unreasonable.* Vigneault v. Dr. Hewson Dental Co., supra, 300 Mass. [223] pages 227, 228, 15 N.E.2d 185, 129 A.L.R. 95. So far as the present action is concerned, no particular interest of the appellant was advanced by maintaining the mill upon the aisle, and *the utility of the machine would be as adequate were it to have been placed in the less dangerous position* behind the counter. Consequently the *risk to intermeddling children outweighs the utility to the proprietor of maintaining the machine upon the aisle,* and its conduct in so placing the machine was not that of a reasonably prudent person." (Emphasis supplied.)

It is because of these principles that we find error in the instruction given and complained of in this case.

■ In this jurisdiction the test of negligent conduct is the same as laid down by Harper and James, supra,—what a reasonably prudent person would or would not do

under the circumstances in which the actor finds himself.[2] This determination is to be made by a consideration of three factors:

1. The likelihood that his conduct will injure others;

2. The seriousness of the injury after it happens;

3. Balanced against the interest which he must sacrifice to avoid the risk.

The third factor is made clear by the quotation from Crane v. Smith, supra, and the Restatement of the Law of Torts, Section 291 which is incorporated in the Crane decision. There it will be noticed that the balance of risk is against "the utility of the act *or of the particular manner in which it is done.*" (Emphasis supplied.)

In the Crane case it was found that though there might be utility in having a coffee-grinder in a store there was not sufficient utility in having it in the aisle of the store to counter-balance the possibility that small children might put their fingers in it and be injured. It was the manner of use which lacked utility rather than the presence of the coffee-grinder itself. The same inference is suggested in the quoted section from Harper and James, supra, wherein it is urged that the "dangerous character" of a lawful act "may call for greater precautions." Again it is not necessarily the utility of the act itself from which a determination of negligence must be made. Often it is the manner in which the act is carried on.

The instruction given in the case at bar which we are called upon to review falls far short in placing before the jury the considerations above set forth. The instruction refers only to the third of three factors constituting the test of negligence. It reads: "You may consider the utility * * * of using the shelf * * * as compared to the * * * risk to others * * *," implying that the jury could determine negligence on the basis alone of the act of having the shelf. There is nothing said with regard to the likelihood of injury or the seriousness of the injury. Moreover there is no mention made which would allow the jury to consider the "manner in which the shelf was used." It mentions only the utility of permitting the existence of the shelf. Had both matters been set before the jury it could have determined if the way Rhodes conducted his actions constituted the same care expected from a reasonable and prudent man.

Rather than confine the jury to an application of the "reasonable man" standard this instruction permits the jury to find negligence or fail to find negligence solely on the basis of balancing the utility of Rhodes' act of leaving the shelf in an open position against the possible risk of

2. See Salt River Valley Water Users' Ass'n v. Compton, 39 Ariz. 491, 8 P.2d 249 (1932).

injury, whereas a reasonable man, for example, might conclude that it would be.dangerous to others to leave the shelf unattended or without some proper warning to others of its lowered position.[3]

For these reasons plaintiffs' assignment of error is well taken. Judgment reversed and a new trial ordered.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.

3. The instruction states an abstract principle of the law which, standing alone, is not complete. This court does not look with favor upon such abstractions. Coy-

ner Crop Dusters v. Marsh, 91 Ariz. 371, 372 P.2d 708 (1962). The reason for this is borne out by the problem raised in this case.