486 P.2d 176

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, Appellant,**

v.

**Carolyn Sue BRITTAIN, surviving wife of Rodney Neil Brittain, Deceased, for and on behalf of herself and Douglas Paul Brittain, et al., the surviving children of the deceased, Appellees.**

**No. 10323.**

Supreme Court of Arizona,
In Banc.

June 23, 1971.

Snell & Wilmer, by H. William Fox, Phoenix, for appellant.

Richard Walraven, Prescott, for appellees.

CAMERON, Justice.

This is an appeal from a jury verdict and judgment in the amount of $100,000 awarded to Mrs. Brittain for herself and five children for the wrongful death of her husband, Rodney Neil Brittain.

We are called upon to decide whether it was error to:

1. deny defendant's motion for a directed verdict,

2. to refuse defendant's requested instructions on foreseeability, and

3. to refuse defendant's requested instructions on duty of care.

The facts necessary to determine this appeal are as follows. Rodney Brittain, plaintiff's husband, was a helicopter pilot for Rotocraft, Inc. On 16 October 1964, he undertook a charter flight for two clients to the Lone Silver Mine in the Bradshaw Mountain area of Yavapai County, Arizona. In the Oro Belle Canyon area—a remote, unsettled mountain area of rugged terrain with steep, brush-covered slopes and many small canyons and ravines—the helicopter struck the wires of defendant Arizona Public Service Company's distribution power line. The line was on an approximately 700 foot span of 0.220 inch copper weld wire—a part of a 1939 distribution line run to the Oro Belle area to provide electricity for local mines. The evidence indicated that the wires had turned a dull gray color and the poles a dull reddish-brown. The testimony indicated that both the wire and the poles readily blended with the countryside which made them difficult to see from the air. In addition, the particular span over the canyon was longer than most and the spacing of the poles was irregular. Mr. Brittain and one of the passengers were killed in the 70–100 foot fall after the collision.

## MOTION FOR DIRECTED VERDICT

Defendant Arizona Public Service Company argues that their motions for directed verdict made at the close of the plaintiff's case and at the close of all testimony should have been granted because of the

failure of the plaintiff to show a duty on the part of the defendant to the deceased. Defendant states in its brief as follows:

"The first question presented by this appeal is whether or not a public utility which owns and maintains an electrical distribution line in a remote, unsettled area of rugged, mountainous terrain has a duty to place markers or other warning devices to warn aviators of the presence of the line when there is no evidence of any prior aircraft activity in the area at or near the altitude of the line or at all."

Air collision cases such as this are governed by the general tort law of this State. § 2–208 A.R.S.; Lunsford v. Tucson Aviation Corp., 73 Ariz. 277, 240 P.2d 545 (1952).

"* * * The question whether damage occasioned * * * to an aircraft while in flight over this state constitutes a tort * * * shall be determined by the law of this state." § 2–113 A.R.S.

In Arizona, to successfully maintain an action for the tort of negligence, the plaintiff must show that the defendant had a duty to protect the plaintiff from the injury of which he complains, that defendant failed to perform that duty, and that such failure proximately caused plaintiff's injury. Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 372 P.2d 333 (1962); Hersey v. Salt River Valley Water Users' Ass'n., 10 Ariz.App. 321, 458 P.2d 525 (1969); Roberson v. United States, 9 Cir., 382 F.2d 714 (1967); Cline v. United States, D.C., 273 F.Supp. 890 (1967). The duty to protect the plaintiff is established by the foreseeability of harm. Rosendahl v. Tucson Medical Center, 93 Ariz. 368, 380 P.2d 1020 (1963); Tucson Rapid Transit Co. v. Tocci, 3 Ariz.App. 330, 414 P.2d 179 (1966). See 155 A.L.R. 157, 100 A.L.R.2d 942 for a general discussion of foreseeability.

In aircraft-power line cases, courts, in dealing with the duty to mark the lines as a matter of law, have differed as to their conclusions. Some have held that there is no such duty. Columbia Helicopters, Inc. v. United States By and Through Bonneville Power Administration (Department of Interior), D.C., 314 F.Supp. 946 (1969). Others have upheld the existence of such a duty. Yoffee v. Pennsylvania Power & Light Co., 385 Pa. 520, 123 A.2d 636 (1956); United States v. State of Washington, 351 F.2d 913 (1965, 9th Cir.); El Paso Natural Gas Co. v. United States, 343 F.2d 145 (1965, 9th Cir.) See Annotation 48 A.L.R.2d 1462 and later case service. Each case involved varying and complex factual patterns, however, and since negligence is a breach of duty and is "relative to time, place and circumstance" (Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652 [1968], citing Caldwell v. Village of Island Park, 304 N.Y. 268, 107 N.E.2d 441 [1952]), we feel that absent the most clear and compelling proof the question ought not to be decided as a matter of law. Defendant, however, asserts, as a matter of law, that it had no duty to the deceased because of lack of foreseeability. Unforeseeability, thus, was the thrust of defendant's argument as to why its motion for directed verdict should have been granted. In a case such as this where the establishment of the duty, i. e. foreseeability of harm, varies as a result of factual distinctions, we have held what is or is not negligence or what is foreseeable is a question for the trier of fact. Barker v. Gen. Petroleum Corp., 72 Ariz. 187, 232 P.2d 390 (1951); Seifert v. Owen, 10 Ariz.App. 483, 460 P.2d 19 (1969).

In the instant case the fact that the wire was extremely small, had turned a color similar to the background as viewed from the air, and the irregular pole pattern, etc. may have presented a uniquely different factual pattern from which to determine foreseeability. Malcolm M. Bridgewater, A.P.S. retired general superintendent who was in charge of the line's construction, testified as follows:

"Q * * * Now, in choosing the location and the design of this line, what factors did you consider?

"A First, to make it as unobtrusive as possible.

\* \* \* \* \* \*

"Q How about the wires?

"A The wires, I chose a copper-weld wire to give the maximum strength and at the same time, since the load was small, to get the smallest wire economically possible \* \* \*.

\* \* \* \* \* \*

"Q What color is copper after it has been out in the weather for 10, 15, 20 years or so?

"A Dark grayish-brown.

\* \* \* \* \* \*

"Q Can you describe for us the nature of the difficulty in seeing this type of cable when it was against a dark background?

"A When it is against the background it blends pretty well with the background. \* \* \*"

Mr. Russell Marsh, a helicopter pilot, testified:

"Q Have you observed power lines in mountainous or broken terrain?

"A Yes, in most cases the lines, the power line spaces are uniform which gives the pilot something definite to go by.

"Q In the instance of this power line, the one which spanned the canyon, would you tell us what you observed with reference to the regularity of spacing between the power poles?

"A They are not spaced regularly at all that I can remember. They are not spaced uniformly."

Also, viewing the evidence in a light most favorable to plaintiff, Daugherty v. Montgomery Ward, 102 Ariz. 267, 428 P.2d 419 (1967); E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970), it would appear that Arizona Public Service Company had knowledge of the unique performance characteristics of helicopters; that such characteristics made them especially adaptable for use in remote and rugged areas; that helicopters had been seen operating in the Bradshaw Mountain-Crown King area; that defendant, itself, utilized helicopters in such remote areas for construction, maintenance and patrol of its lines; and that there had been a helicopter-power line collision in the Childs-Verde River area in 1961, three years prior to this accident.

Under such circumstances the directed verdict would have been improper. Directed verdicts are restricted to those cases where reasonable minds cannot differ. Campbell v. Brinson, 89 Ariz. 197, 360 P.2d 211 (1961); Sturm v. Heim, 95 Ariz. 300, 389 P.2d 702 (1964).

### INSTRUCTIONS ON FORESEE-ABILITY

Defendant next contends the court erred in refusing to instruct on defendant's theory of foreseeability. This court has declared on numerous occasions that jury instructions will not be considered "piece meal" on appeal and that they must be considered as a whole, the test being whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision. Pacific Greyhound Lines v. Zane, 160 F.2d 731 (CCA Ariz., 1947); Daly v. Williams, 78 Ariz. 382, 280 P.2d 701 (1955); Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674 (1956). After giving MARJI Instruction No. 8 on negligence,[1] the court charged:

"Although the power poles and lines at the location of the accident at issue in

---

1. MARJI No. 8 (Revised)
   "Negligence is lack of ordinary care. It is failure to exercise that degree of care which a reasonably prudent or careful person would have exercised under the same circumstances. Negligence may arise from doing an act which a reasonably prudent or careful person would not do under the same circumstances, or from failing to do an act which a reasonably prudent or careful person would do under the same circumstances.

   "You are instructed that the fact that an accident took place or that the issue of negligence is raised in the pleadings does not support an inference or conclusion that either party was negligent."

this lawsuit may not have created a foreseeable risk of harm to persons using the air space near such poles and lines when they were first erected [1939], the law imposed upon Arizona Public Service Company a continuing duty to prevent them becoming an unreasonable hazard under changed conditions or circumstances. Whether they did become an unreasonable hazard is a fact for you, the Jury, to determine from the evidence before you."

■ Defendant requested two instructions as follows:

"A duty to exercise care arises from probabilities but not from bare possibilities of danger. In order that conduct be considered negligent, it must be shown that a reasonable and prudent man should have recognized that his action or failure to act would create an appreciable chance rather than a bare possibility that harm might be done.

\*    \*    \*    \*    \*    \*

"A person is required to foresee and guard against only what usually happens or is likely to happen and he is not required to foresee and provide against that which is unusual and unlikely to happen. The proper test is whether or not the harm was likely to result from the person's action or failure to act according to the usual experience of persons."

These two instructions were taken from Tucker v. Collar, 79 Ariz. 141, 143, 144, 285 P.2d 178, 179, 180 (1955). In considering the instructions therein given, this court was careful to note that the determination was limited to the particular objections raised and did not reach the particular phraseology. The court then addressed itself to what the instructions "in effect" told the jury, i. e. that necessity of the defendant, when he committed the acts alleged to be negligent, to reasonably anticipate a risk of harm resulting therefrom. Such phrases as contained in the instructions in the Tucker case, supra, and as requested by defendant in this case—"probabilities", "bare possibilities", "appreciable change", "un-

usual and unlikely to happen", etc.—only heighten the confusion of the jury in an already sufficiently confused area. Such departure from the "reasonableness" standard is unwarranted and we do not believe it was error to refuse the requested instruction. Valley Nat. Bank v. Witter, 58 Ariz. 491, 121 P.2d 414 (1942) ; Trickel v. Rainbo Baking Co. of Phoenix, 100 Ariz. 222, 412 P.2d 852 (1966) ; City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30 (1938) ; Hammels v. Britten, 53 Ariz. 112, 85 P.2d 992 (1939) ; City of Tucson v. LaForge, 8 Ariz.App. 413, 446 P.2d 692 (1968) ; State ex rel. Herman v. Mestas, 12 Ariz.App. 289, 469 P.2d 855 (1970).

■ However, deciding the requested instructions were properly refused does not dispose of defendant's contention that the jury was not properly instructed on foreseeability. Foreseeability goes to the gist of the action of negligence and failure to give a proper instruction on such a vital issue may constitute reversible error. Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240 (1946) ; Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071 (1954). See Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098 (1951). We have examined the instructions as a whole and find no error. The instruction as given above that the lines may not be considered a foreseeable risk unless they were an "unreasonable hazard" was properly given to the jury.

INSTRUCTION ON DUTY OF CARE
BY THE PILOT

■ As to the appellant's other requested instructions relating to Mr. Brittain's correlative duty to exercise due care to avoid injury or damage to persons or property occupying or using the land below and the subservience of the aviator's use to that of the landowner's, we find them to have been substantially covered by the instructions given. The court charged § 2-203 A. R.S., relating to the duty, in flight over land, not to fly at such low altitude as to interfere with the existing land use; and 14 C.F.R. § 91.79—Federal Aviation Regu-

lations—relating to permissible minimum altitudes. In both cases the court instructed that if decedent had violated either regulation he would be negligent as a matter of law. If the jury found such violation they were then to consider if it was a proximate cause of his death. The requested instructions ultimately provided nothing beyond allowing the issue of Mr. Brittain's possible negligence to go to the jury. That issue went to the jury on the instructions as given on the basis of the standard of conduct required of him, and on the general charge of relating to contributory negligence, pursuant to Art. 18, § 5, Arizona State Constitution, A.R.S., and Layton v. Rocha, 90 Ariz. 369, 368 P. 2d 444 (1962).

Judgment affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and LOCKWOOD, JJ., concur.