650 P.2d 476

**Steven J. JAEGER, Plaintiff/Appellant,**

v.

**Peter D. PETRONI, Defendant/Appellee.**

**No. 2 CA–CIV 3976.**

Court of Appeals of Arizona,
Division 2.

April 22, 1982.

Rehearing Denied June 3, 1982.

Review Granted June 22, 1982.

Michael D. Miller, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by Dan Cavett, Tucson, for defendant/appellee.

## OPINION

BIRDSALL, Judge.

This is an appeal from a judgment in favor of the defendant/appellee in a personal injury action. The plaintiff/appellant contends that the trial court erroneously instructed the jury. We agree that one instruction was erroneously given, and reverse.

The facts, viewed in the light most favorable to sustaining the judgment, are as follows. The appellant was one of several teenage boys riding down the Mount Lemmon Highway in a station wagon driven by Michael Manzanedo. As they travelled down the mountain, the occupants of the station wagon were throwing snowballs at vehicles coming in the opposite direction. A snowball thrown by the appellant struck and shattered the windshield of a pickup truck driven by the appellee. As the appellee stopped his truck, Manzanedo picked up

speed and fled down the mountain. Appellee turned his truck around and gave chase. He observed that the station wagon was being driven in a reckless manner, and realized that his pursuit of the station wagon was "fairly dangerous." He nevertheless continued his pursuit in the hope of stopping the station wagon or reading its license number. After seven or eight miles of pursuit, he was able to pull within ten feet of the back end of the station wagon. He honked his horn and signalled the station wagon to pull over, but Manzanedo did not stop. At about that point the appellee's passenger was able to get the license number and the appellee testified "he gave up the pursuit." He nevertheless continued to follow the other vehicle.

Shortly thereafter, the vehicles came to a long straight stretch of highway at the base of the mountain. At this point the pursued began to outdistance the pursuer, and the appellee was left behind as the station wagon accelerated to a speed of eighty-five to ninety miles per hour. Manzanedo testified that it was his intention to get off the mountain and on to the "straight-away and then just lose them," and that he was still trying to get away when the crash occurred. He also testified that at that time he had reason to believe Petroni had given up the chase and quit. When the station wagon had opened a lead of about 250–300 yards, it suddenly went out of control and crashed. Just before the crash the appellee's truck was going about 55 miles per hour. The crash occurred within a few (three or four) seconds after the distance between the vehicles had increased. Appellant received permanent injuries in the crash. He settled his claim against Manzanedo, and brought this action against appellee.

The appellee's theory at trial was that he had not been negligent in pursuing the station wagon and that even if he had been negligent, the negligence of Manzanedo in continuing to flee after the chase had allegedly ended was an efficient intervening force (superseding cause) that relieved him of liability for the appellant's injuries. In support of the latter theory, he requested and received the following jury instruction:

"If you find that the defendant was negligent and that his negligence was a substantial factor in bringing about an injury to the plaintiff, but that the immediate cause of the injury was the negligent conduct of a third person, the defendant is relieved of liability for such injury if:

1. At the time of his conduct, the defendant did not realize, nor reasonably should have realized, that the third person might act as he did; or

2. A reasonable person knowing the situation existing at the time of the conduct of the third person would have regarded it as highly extraordinary that the third person had so acted in such a fashion; or

3. The conduct of the third person was extraordinarily negligent and was not a normal consequence of the situation created by the defendant."

The authority cited for this instruction was §§ 440 and 447 of the Restatement of Torts 2d, which define superseding cause and list circumstances under which the intervening negligence of a third party is *not* a superseding cause.[1]

The appellant timely objected to the giving of this instruction, stating:

" . . . there is no indication that there was any intervening cause which could be considered superseding. . . . that there is no superseding intervening cause which would entitle the defendant to instructions on superseding intervening act since the host driver, Mr. Manzanedo, testified that he resumed and continued his speed without interruption and that the speed of the vehicle—and that the host driver increased his speed due to the fact the defendant had been chasing him."

---

1. The instruction was, apparently, an attempt to state the converse of Restatement § 447. A correct statement of the converse (which itself would not necessarily by a correct statement of the law) would require the word "and," instead of "or," at the ends of subparagraphs 1 and 2.

No objection was urged that the offered instruction was not a proper statement of the law. The appellant now makes this contention on appeal. Not having made that specific objection in the trial court he cannot now raise it on appeal. Rule 51(a), Rules of Civil Procedure, 16 A.R.S.; *Winchester v. Palko,* 18 Ariz.App. 534, 504 P.2d 65 (1972).

The appellant's objection was, however, sufficient to preserve his contention that the evidence did not support the giving of any superseding-intervening instruction. The purpose of the rule is to prevent the trial court from committing error in the instructions, *Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966); *Milam v. Milam,* 101 Ariz. 323, 419 P.2d 502 (1966). That purpose would have been served if the trial court had refused the instruction.

■ We agree with the appellant that it was error to give an intervening-superseding instruction under the evidence in this case. In order for the conduct of the appellant's driver to be an intervening-superseding cause, the evidence would first have to support a finding that Manzanedo's conduct in speeding on the straight-away was an intervening cause of the accident. Where the defendant's negligent conduct has terminated and only the risk of harm created by that conduct is present, then any outside force which is a substantial factor in bringing about the injury is an intervening force. *Zelman v. Stauder,* 11 Ariz.App. 547, 466 P.2d 766 (1970). Assuming, arguendo, that the negligent conduct of the appellee had ended and that Manzanedo's increased speed was an intervening cause of the accident, in order to also be a superseding cause the evidence would then have to support a finding that Manzanedo's high speed on the straight-away was extraordinary or would not normally be expected by a reasonable person in view of the situation existing at the time of its intervention. *Herzberg v. White,* 49 Ariz. 313, 66 P.2d 253 (1937). A more recent decision contains the following:

"For an intervening cause to be a superseding cause it must be a cause which could not have been reasonably foreseen or anticipated by the defendant. Stated differently, in order for an intervening cause to supersede the original negligence, the intervening cause must be so extraordinary that the defendant could not have reasonably anticipated that the cause would intervene." *City of Phoenix v. Schroeder,* 1 Ariz.App. 510, 516–517, 405 P.2d 301 (1965).

We do not believe that a reasonable person could find that Manzanedo's speed upon reaching the bottom of the mountain was so extraordinary that the appellee could not have reasonably anticipated it.

Viewing the evidence in the light most favorable to sustaining the verdict, we fail to see how such a finding could rationally be made. For the jury to find initially that the appellee was negligent with respect to the appellant, it would necessarily find that Manzanedo's flight, in a manner likely to result in an accident, was a foreseeable result of the appellee's pursuit. Having made this initial finding, it could not rationally have found that the *possibility* of Manzanedo's continued flight, for mere seconds after the appellee had allegedly abandoned the pursuit, was unforeseeable, and not a normal consequence of the situation. *See* Restatement of Torts 2d § 449. It was undisputed that the incident involved was a chase, not a race, and that Manzanedo's purpose was to escape, not to beat the appellee to the bottom of the mountain.

The appellee has suggested that Manzanedo's demeanor during his testimony could have led the jury to disbelieve his testimony and to conclude that Manzanedo was speeding for reasons unrelated to the pursuit. Even if the jury disbelieved Manzanedo, other evidence, including the testimony of the appellant and another passenger in the station wagon, was to the same effect as his.

■ The next question, of course, is whether the error requires reversal. We realize that the jury's general verdict in appellee's favor could conceivably have been rendered without regard to the erroneously given instruction. The jury might

have found that appellee's pursuit was not negligent, that it was not a cause-in-fact of appellant's injuries, or that the causal connection was too remote to impose liability. From the evidence, however, we believe any of those findings was unlikely, and the record reveals that a great deal of appellee's closing argument centered upon the instruction. We are therefore convinced that appellant was prejudiced by the error and that reversal is required.

Appellant also objects to the giving of the following instruction:

"You are instructed that the defendant was required by law to anticipate and foresee and guard against only what is likely to happen, but that he is not required to foresee and guard against that which is not likely to happen or in other words that which is only remotely or slightly probable. And that the proper test is not whether the injurious results or consequences were possible, but whether they were likely to occur according to the usual experience of persons."

Appellant contends that the instruction is an incorrect statement of the law, *See Arizona Public Service Co. v. Brittain,* 107 Ariz. 278, 486 P.2d 176 (1971), and that it was not supported by the evidence. Again, however, only the latter objection was raised below. Since this question may arise during the new trial, we will determine whether an instruction on the foreseeability of appellant's injury was supported by the evidence.

█ In our previous discussion we have assumed that appellee's pursuit was negligent because the question of superseding cause could arise only after an initial finding that appellee was negligent and that his negligence contributed to the accident. We are not prepared to hold, however, that the evidence established appellee's negligence or the foreseeability of appellant's injuries as a matter of law. It is true that appellee admitted in his testimony that he believed the chase to be "fairly dangerous." This admission was made in response to a very general question and will not be taken as an admission that appellee foresaw the risk of

appellant's injuries, since he could have been admitting only that he perceived danger to himself or to property. In addition, there was evidence that the speeds at which the appellee followed the Manzanedo vehicle were within the legal limits, and that he did not believe that his pursuit was actually causing Manzanedo's reckless driving. We therefore find that the question of the foreseeability of appellant's injuries was for the jury's determination in deciding whether appellee was negligent in the first instance.

Reversed and remanded for new trial.

HOWARD, C. J., concurs.

HATHAWAY, Judge, dissenting.

Whether or not Manzanedo was extraordinarily negligent in accelerating to 90 or 95 mph and swerving to avoid a paper wrapper after the pursuit had ended was, in my opinion, a jury question. I would affirm.